```
IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SAID GSSIME,                      )
                                  )
            Plaintiff,            )        9:06 CV 1499
                                  )
      v.                          )
                                  )
MR. CADIAN, Deputy                )        MEMORANDUM AND ORDER
Superintendent for Security;      )
C.O. PIZZOTTO; and inmate         )
B. NIXON,                         )
                                  )
            Defendants.           )
_____────)
```

**I. INTRODUCTION**

This matter is before the Court on defendants Kadien[1] and Pizzuto's[2] motion for summary judgment (Filing No. 28).[3] Upon review of the motion, the memoranda and evidentiary submissions of the parties, and the applicable law, the Court finds that the motion should be granted in part and denied in part.

**II. BACKGROUND**

Plaintiff Said Gssime ("Gssime") was incarcerated at Mid-State Correctional Facility ("Mid-State") and held in the custody of the New York State Department of Correctional Services

---

[1] The defendant's last name is misspelled in the caption; the correct spelling is Kadien (Filing No. 28-3, ¶ 2 n. 1).

[2] The defendant's last name is misspelled in the caption; the correct spelling is Pizzuto (Filing No. 28-3, ¶ 2 n. 1).

[3] Defendant B. Nixon was previously dismissed from this action (Filing No. 4).

from April 30, 2004, to June 21, 2006 (Filing No. 28-3, ¶ 1; Filing No. 35 at 9, ¶ 1).  At all times relevant to the complaint, Kadien was the Deputy Superintendent of Security at Mid-State, and Pizzuto was a correction officer at Mid-State (Filing No. 28-3, ¶ 2; Filing No. 35 at 10, ¶ 2).

Gssime brings this action pursuant to 42 U.S.C. § 1983, alleging Kadien and Pizzuto violated Gssime's constitutional rights while he was incarcerated at Mid-State (*See* Filing No. 1).  The complaint generally asserts three claims: (1) a claim for inadequate medical care against Pizzuto, (2) a claim against both defendants for failing to protect Gssime from an inmate attack, and (3) a claim for retaliation against Pizzuto (*See id.;* Filing No. 28-3, ¶ 3; Filing No. 35 at 11, ¶ 3).

**1. Facts relating to Gssime's claim for inadequate medical care**

Gssime claims that in April of 2006,[4] he "was extrem[e]ly sick suffering from lung infection and pneumonia" and went to Pizzuto to request emergency medical care (Filing No. 1 at 4).  According to Gssime, Pizzuto laughed at Gssime's request, told Gssime to go to his bed, and refused to call the medical department (*Id.* at 4, 7).  On April 6, 2006, which Gssime alleges was a few days after he initially requested emergency medical

---

[4] The complaint alleges Gssime requested emergency medical care in May of 2006 (*see* Filing No. 1 at 4), but Gssime subsequently stated the incident occurred in April of 2006 (*see* Filing No. 35 at 11, ¶ 4).

care, Pizzuto called the medical department and spoke with a nurse about Gssime's condition (*Id.* at 7; Filing No. 28-4 at 4). Pizzuto told the nurse he had an inmate who was coughing but did not say the condition was emergent (Filing No. 1 at 5, 7). Pursuant to the nurse's instructions, Pizzuto gave Gssime Tylenol (Filing No. 1 at 7; Filing No. 28-3, ¶ 4).

Later that night, three inmates carried Gssime to the "Mental Health Unit" (Filing No. 1 at 5; Filing No. 35 at 3).  A nurse at the Mental Health Unit examined Gssime, reported that he was experiencing cold and flu symptoms, and admitted him to the infirmary overnight to rule out pneumonia (Filing No. 28-5 at 5, 6).  The next day, Gssime was given a chest x-ray, which did not reveal any "acute disease" (Filing No. 28-5, ¶ 6).  Gssime received medication and was discharged from the infirmary on April 12, 2006 (Filing No. 28-5, ¶ 9).

**2. Facts relating to Gssime's failure to protect and retaliation claims**

On June 9, 2006, Gssime filed a grievance against Pizzuto for an alleged denial of emergency medical care on June 6, 2006 (Filing No. 28-3, ¶ 11; Filing No. 35 at 13, ¶ 11).  On June 19, 2006, Gssime told a correction officer that he slipped in the shower area while cleaning it (Filing No. 28-3, ¶ 16; Filing No. 35 at 16, ¶ 16).  The correction officer believed Gssime's injuries looked suspicious and sent Gssime to the medical department (Filing No. 28-4 at 25).  According to the

injury inmate report, Gssime had red raised areas on his head and neck, and abrasions on his arms and back (Filing No. 28-4 at 29). A nurse determined that Gssime's injuries were consistent with those normally sustained in a fight, and prison staff filed an inmate misbehavior report against Gssime (Filing No. 28-4 at 31). On June 19, 2006, Gssime signed a protection waiver form that stated he did not believe there was a threat to his life by remaining in general population (Filing No. 28-4 at 32).

While Gssime initially claimed he sustained injuries from a slip and fall, Gssime later maintained that the injuries were the result of an attack by an inmate named Nixon and other inmates (Filing No. 1 at 5). After June 19th, Gssime allegedly received information that the attack was a retaliation against him for filing the inadequate medical care grievance against Pizzuto (*Id.*; Filing No. 35 at 17, ¶ 18). According to Gssime, Gssime received information that Pizzuto promised Nixon that Nixon would be moved to a one-man room if he attacked Gssime (Filing No. 35 at 17, ¶ 18).

### III. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law."  A fact is material when its resolution affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The Court must view the evidence in a light most favorable to the nonmoving party, with all reasonable inferences drawn in that party's favor.  *See Matsushita Elec. Indus.*, 475 U.S. at 587.  However, when a motion for summary judgment is properly made and supported, the nonmoving party may not rest on the mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.  Fed. R. Civ. P. 56(e)(2).  "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

In addition, because Gssime is a pro se litigant, the Court must construe Gssime's complaint and brief liberally, reading the submissions "to raise the strongest arguments they suggest."  *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007).

**IV. DISCUSSION**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988). Gssime complains of conduct by prison staff, and therefore, alleges conduct by persons acting under the color of state law. The main issue is whether the alleged conduct deprived Gssime of any federally protected rights.

**1. Inadequate Medical Care**

Gssime alleges Pizzuto delayed in contacting the medical department after Gssime initially requested emergency medical care, and Pizzuto denied Gssime access to emergency medical care on April 6, 2006.  While Gssime eventually received medical treatment, he alleges Pizzuto's actions delayed the receipt of such treatment.  Gssime's claim that Pizzuto provided Gssime inadequate medical care and delayed Gssime's access to emergency medical care is properly analyzed under the Eighth Amendment.

To prevail on an Eighth Amendment claim arising out of inadequate medical care, Gssime must prove "deliberate indifference to [his] serious medical needs."  *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998)(quoting *Estelle v.*

*Gamble*, 429 U.S. 97, 104 (1976)).  This standard includes an objective prong and a subjective prong.  *Id.*  "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.'"  *Id.* (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)).  "[A] condition of urgency, one that may produce death, degeneration, or extreme pain" constitutes a "sufficiently serious" medical need.  *See Hathaway*, 37 F.3d at 66 (quoting *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990)(Pratt, J., dissenting)).  "Second, the charged official must act with a sufficiently culpable state of mind."  *Id.*  "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

       Here, genuine issues of material fact exist which preclude summary judgment on Gssime's inadequate medical care claim against Pizzuto.  Pizzuto argues that even if Gssime's allegations give rise to liability, Pizzuto is entitled to qualified immunity; however, the Court finds that genuine issues of material fact preclude a finding of qualified immunity at this time.  Accordingly, Pizzuto's motion for summary judgment on Gssime's claim for inadequate medical care will be denied.

**2. Failure to Protect- Eighth Amendment**

The complaint alleges that during the time Gssime was incarcerated at Mid-State, the facility was controlled by "dangerous inmates" rather than prison staff, and as a result, inmate rape and assault occurred without recourse. In particular, the complaint alleges Gssime was subject to an inmate attack on June 19, 2006, when an inmate named Nixon and other inmates kidnaped and assaulted Gssime. Gssime argues that defendants' failure to prevent this attack amounted to an Eighth Amendment violation.

The Supreme Court has found that the Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates[.]" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). In order to establish an Eighth Amendment claim arising out of inadequate inmate safety, Gssime must prove two elements. *Id.* at 834. First, Gssime must show "he [was] incarcerated under conditions [that] pos[ed] a substantial risk of serious harm." *Id.* Second, Gssime must show defendants acted with "deliberate indifference" to his health or safety. *Id.* As discussed above, "[a]n official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk

of serious harm exists, and he must also draw the inference.'" *Chance*, 143 F.3d at 702 (quoting *Farmer*, 511 U.S. at 837).

Here, Gssime has failed to offer sufficient evidence to create a genuine dispute that defendants' failure to prevent the alleged attack amounted to an Eighth Amendment violation.  First, there is insufficient evidence to create a genuine dispute that the objective prong is satisfied.  Gssime asserts two bases for his claim that he was incarcerated under conditions that posed a substantial risk of serious harm: (1) the prison was "run" by inmates rather than prison staff, and (2) defendants permitted his alleged attacker to live in the same "six-man room" as Gssime despite the fact the attacker had an assault record.  Both arguments lack adequate factual support in the record.  The complaint and inmate affidavits submitted by Gssime contain general allegations that dangerous inmates controlled Mid-State and allowed inmate attacks to occur; however, Gssime has failed to produce evidence of any specific instances of inmate attacks or threats to his safety, and there is no evidence that Gssime requested to be placed in protective custody.[5]

In addition, Gssime claims his safety was endangered because he had to share a six-man room with Nixon, the alleged

---

[5] Allegations made in Gssime's brief and 7.1(a)(3) statement that are not supported by evidence in the record are insufficient to create a genuine dispute for trial.  Thus, such allegations are not considered herein as support for Gssime's claims.

attacker, and Nixon had a record of assaulting individuals.  Even taking these allegations as true, Gssime has not alleged that Nixon ever threatened or attacked Gssime prior to June 19th, and indeed, Gssime's own statements indicate that he "never had a personal problem," argument, or fight with Nixon prior to the attack[6] (*See* Filing No. 35-2 at 25; Filing No. 35 at 16-17, ¶ 16).  Gssime's actions after the attack also suggest that Gssime did not believe his life was in danger.  Notably, there is uncontroverted evidence that Gssime initially told prison staff that his injuries were the result of a slip and fall rather than an inmate attack, and Gssime signed a protection waiver form the same day as the attack, which stated: "I . . . feel that I have no need for protection from anyone here at Mid-State Correctional Facility.  I feel that, at this time, there is no threat to my life by remaining in general population" (Filing No. 28-4 at 32).  There is insufficient evidence Gssime was incarcerated under conditions that posed a substantial risk of serious harm.

There is also insufficient evidence to create a genuine dispute as to whether either defendant acted with deliberate indifference to Gssime's health or safety.  Gssime argues that Kadien knew Gssime's safety was threatened because Gssime wrote

---

[6] There is a factual dispute as to whether the June 19th incident was an inmate attack on Gssime, but the Court assumes the incident was an attack for purposes of the defendants' motion for summary judgment.

anonymous letters to Kadien about the lack of inmate safety, and a second inmate wrote Kadien about the problem of inmate rape and assault at Mid-State.  These letters are not before the Court, and there is no evidence that the letters communicated specific information to Kadien, such as specific instances of inmate attacks or specific threats to Gssime's safety.[7]  Thus, there is insufficient evidence that the letters notified Kadien of a substantial risk of serious harm to Gssime such that Kadien's failure to act on the letters would amount to an Eighth Amendment violation.  *See Wilson v. Campbell*, No. 06-cv-0175 (GLS-RFT), 2008 WL 902187, at * 5 (N.D.N.Y. Mar. 31, 2008)(slip opinion)("A general, conclusory statement that an inmate fears for his safety, without more, is insufficient information from which an inference can been drawn that such inmate's a (sic) safety is actually at risk."); *see also Rivera v. State of N.Y.*, No. 96 CIV. 7697(RWS), 1999 WL 13240, at * 9 (S.D.N.Y. Jan. 12, 1999)(unreported)(communicating vague concerns of a future assault by unknown individuals is not sufficient to impose liability on an officer who fails to protect an inmate); *Wright v. Goord*, No. 04-CV-6003L, 2005 WL 3466011, at * 2 (W.D.N.Y. Dec. 19, 2005)(unreported)(same).

---

[7] Gssime alleges in his statement of material facts that one letter informed Kadien of a specific instance of rape on another inmate, but this allegation is not supported by evidence in the record.

Gssime also claims Kadien's deliberate indifference is evidenced by the fact that Kadien knew Nixon had a record of assaulting individuals but permitted him to remain in the general prison population. As indicated above, there is no evidence that Gssime complained of problems with Nixon or informed prison staff that Nixon posed a threat to Gssime's safety. Gssime alleges in his statement of material facts and brief that he asked Kadien to move him to another facility or housing unit, but Gssime has not provided an affidavit or other evidence to support these allegations. Accordingly, there is insufficient evidence that Kadien knew Nixon posed a substantial risk of serious harm to Gssime's safety.

With regard to Pizzuto, the complaint and Gssime's other submissions allege Pizzuto was deliberately indifferent to Gssime's health or safety because Pizzuto actually knew of and encouraged Nixon to attack Gssime.[8] However, as discussed more fully below, these allegations are conclusory and lack factual support in the record.

Based on the foregoing, there is insufficient evidence from which a reasonable jury could find that defendants' failure to prevent the inmate attack amounted to an Eighth Amendment

---

[8] To the extent Gssime also claims Pizzuto was deliberately indifferent to Gssime's safety because Pizzuto failed to move Gssime to a different housing unit, these allegations fail to support a finding of deliberate indifference with regard to Pizzuto for the same reasons they fail with regard to Kadien.

violation.  Accordingly, defendants' motion for summary judgment on Gssime's failure to protect claim will be granted.

### 3. Retaliation- First Amendment

When the complaint is read liberally, Gssime asserts a claim for retaliation against Pizzuto.  Gssime claims Pizzuto retaliated against Gssime for filing a grievance for inadequate medical care by conspiring with Nixon and other inmates to have Nixon attack Gssime.

The Second Circuit has warned that retaliation claims may be "easily fabricated," and therefore, such claims should be approached with "skepticism and particular care."  *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).  To prevail on his retaliation claim, Gssime must show the following: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  *Id.* at 492.

Here, Gssime has not produced sufficient evidence to raise a question of material fact as to whether Pizzuto took adverse action against Gssime.  The complaint only provides conclusory allegations that the inmate attack was a retaliation against Gssime, and the complaint does not specifically allege Pizzuto's involvement (*See* Filing No. 1 at 5).  Statements made

in Gssime's 7.1(a)(3) statement provide more clarity as to the basis of Gssime's retaliation claim, but these allegations are not supported by evidence in the record.  In addition, inmate affidavits in the record do not contain any admissible factual evidence that Pizzuto conspired with Nixon or other inmates to attack Gssime.  To the extent Gssime claims the retaliatory conduct taken against him involved acts which occurred after the attack, there is similarly insufficient evidence that Pizzuto was involved in such conduct.  Because there is insufficient evidence from which a reasonable jury could find that Pizzuto took adverse action against Gssime, Gssime's retaliation claim fails.  Accordingly, Pizzuto's motion for summary judgment on Gssime's retaliation claim will be granted.

## V. CONCLUSION

For the reasons stated herein, Pizzuto's and Kadien's motion for summary judgment will be granted in part and denied in part.  Accordingly,

IT IS ORDERED:

1) Kadien's motion for summary judgment on Gssime's failure to protect claim is granted.

2) Pizzuto's motion for summary judgment on Gssime's failure to protect and retaliation claims is granted.

3) Pizzuto's motion for summary judgment is denied in all other respects.

        4) Defendant Kadien is terminated as a party defendant herein.

        DATED this 28th day of April, 2009.

                              BY THE COURT:

                              /s/ Lyle E. Strom
                              ------------------------------
                              LYLE E. STROM, Senior Judge
                              United States District Court